Mr. Lutter. Thank you, Your Honor. My name is David Lutter. I represent the petitioners in this case. I'm going to assume that you've read everything, which I'm sure you always do. But let me put a little bit of context on the issue in this case about the withdrawal of approval of NPDES programs. First note that Congress has directed that states shall at all times or state programs shall at all times be in accordance with 33 U.S.C. 1342 and guidelines promulgated under Section 1314. Those guidelines are at 40 CFR Part 123. Congress and EPA have established a five-step process for withdrawing state program approvals. That begins with a determination by EPA whether cause exists to determine that the state is not administering its NPDES program in accordance with the requirements of the Clean Water Act and EPA regulations. As I understand it, if cause exists, EPA has to make a formal determination and if they formally determine that there's a miscompliance or noncompliance, they've got to take action. Correct. Well, the action that they have to take, well, the very first step is just to determine whether cause exists. If they find cause exists, they go to a hearing, a formal hearing. If as a result of that hearing, they make a final determination that the state has not complied, then they issue a notice of deficiencies to the state. The state has an opportunity to correct those deficiencies and only if the state fails to correct those deficiencies is EPA required to withdraw the program. Yeah, I understand, but as I also understand your position from the briefs, it's that there's mandatory requirements for EPA all the way. There's no play in the joints. There's no discretion about it may exist here, but let's try to work this out before we make a determination. Isn't that what the main difference between the two sides? I think the main difference is that EPA says that they have discretion even to determine, well, they have discretion to determine whether the program should be withdrawn. We say that they are required to make a factual determination whether the state has complied with federal regulations. That factual determination then drives the following procedures and ultimately the withdrawal of the program. Maybe an example. Well, I'm trying to focus to what I understand to be the point of difference between the sides. If 30 plus states, for example, don't permit their local agency, let's take ADEM for example, to sue another state agency. You can pick a number from Alabama as you know that possibly could be sued. That's a deficiency and it's not going to be negotiated out. You're just not going to negotiate the state of Alabama to amend its constitution. You've got to pull the permit process from the state. Well, I'll tell you, the way to avoid that is for EPA to change its minimum requirements. I understand that and that occurred to me, but then the regulation process has gotten to be cumbersome. That really begs the question of whether EPA has to find a deficiency as long as that regulation is on the books. For example, as I understood your position, they've got to go ahead and do it and pull the permitting authority. Then two or three years later, they finally get the reg amended or revised or rescinded. Then that's fine. In the meantime, EPA does the permitting authority function for 30 plus states, which they can't possibly do. I don't understand how your side would be better off if they were forced to do so. Well, Your Honor, the scenario that you described may in fact be the outcome of our position. However, I would caution the Court that we're not at that point yet. That decision to withdraw the program is way down the road. Right now, we're only at the point. The only issue in this case is EPA's determination whether there is cause to find that the state has not complied. I understand that, but in determining whether EPA is right that they don't have to mandatorily do each of these things all the way down that road. It is only reasonable to see what's down that road, the immovable object, which whether you get there sooner or later, is going to be there. And that may be the case. EPA wrote the regulations. They said these are minimum requirements. We expect every state to meet these minimum requirements. Congress said, meet the requirements that EPA has adopted. All right. Your position is it may be a draconian, undesirable result. It may hurt my side more than it helps in the long run, but it's not our fault. It's not our fault and it can be remedied by changing the rules. I understand your position. Well, I do have a question. So, are you suggesting that there's no amount of discretion in this determination and whether or not there's cause? Well, the determination is based on a factual determination or is a factual determination. I would say that there is no discretion because the rules, 40 CFR 123.64B, says they are to make a determination whether the state has complied with the minimum requirements. That's a factual determination. I don't see where that requires or allows any discretion. And when EPA decides a petition for withdrawal, not petition for withdrawal, but it's a petition for a determination whether the state has complied with federal requirements. When EPA makes a decision on that petition, the scope of its review is simply whether or not the state complied with minimum requirements. It's not whether or not they feel like program withdrawal is appropriate. It's just whether or not the state complied with federal requirements. So, this court, the 11th Circuit, in Sierra Club versus Johnson, recognized there is both a discretionary component and a mandatory component. And I don't know, perhaps I'm misunderstanding you, but it seems to me that you're suggesting that there isn't much of a discretionary component that's also mandatory as well, the decision whether or not they should even go forward. Well, what I'm saying is that this initial decision, whether or not there's cause, to proceed with a hearing, is a factual determination only. The discretion, I think, comes in at the end of the process, which is not, we're not in that process yet. But if there's a hearing, if EPA finds that there is, that the state has not complied, then there is a process, I think, for discretion. Must this factual determination be in writing? I mean, what does it have to be? According to the rule, EPA is required to put their decision in writing that responds to our petition. Our petition is to make that determination of noncompliance. EPA, by the rule, is required to put that decision in writing. But at the end of the process, there is opportunity for discretion. Well, what specific, I didn't see that articulated, standard for the exercise of that discretion is there at the end of the process? If the EPA says, our regs require you to be able to sue the offending agency, point source type agency, and Alabama, you can't do that. Now, we hereby what? Tell me the discretionary standard language. Well, I think that language is at the end of the process where EPA makes a factual determination, a final factual determination. I understand where we are. What does EPA say in exercising its discretion? How does it articulate that discretion if it doesn't want to take permitting authority away from ADEM? The rules say that EPA must list the deficiencies to the state. The state has 90 days to correct those deficiencies or 90 days to make appropriate corrections. And I think at that point, EPA could exercise some discretion as to whether or not what they propose is appropriate. But isn't this where you get into the word shall, that if there is the deficiency and if appropriate corrective action is not taken within this 90-day period, the administrator shall withdraw approval of the program. And with the example that you've raised that we're talking about, there's no corrective action. Well, I think we don't know what that corrective action might, what corrective action this state proposes. I'm sorry, I chose the hypothetical because A, it has some basis in fact, and B, it makes your position, it highlights your position and the potential problem with it. If the noted deficiency is in Alabama, ADEM can't sue the Department of Transportation, cannot do it, state constitutional provision as interpreted by the Alabama Supreme Court. Okay, that's the deficiency. You give the state of Alabama an opportunity to cure it and they said, no, we can't. It's in the Constitution and nobody's going to approve a constitutional amendment. We couldn't even get it through the House, much less the House, Senate and the people. All right, then what discretion, if any, is there? When the response is not, this is what we're going to do to cure the deficiency, it's the, we can't cure the deficiency. Yeah, I think in that case, the result probably has to be that EPA would say, you failed to correct the deficiency. You failed to even propose a plan to correct the deficiency. We have to, the shall comes into play. Okay, so then you've got to pull 30 plus states permitting authority. No, I've had cases where EPA takes seven years to designate a critical habitat and the explanation, I won't say excuse, it may be actual fact, but the explanation is we just don't have the resources. And if they don't have the resources to do that sort of thing, how are they going to have the authority states? I recognize that's a problem, but this is what Congress said has to be done. You know, this, perhaps if EPA had done its job right, or perhaps, perhaps if we all knew the Alabama Supreme Court's position on sovereign immunity back in 1979, if we knew that their would have said, we can't approve your program to begin with. It's hard to blame it on this. This is not just an old Alabama, Mississippi thing, where you've got more than 30, I mean, you're over 60% of the states. And it goes back to the sovereign immunity of the king. It's not something that George Wallace and his folks invented. Maybe, I quite frankly don't know what the EPA was it's just obvious to anybody who's dealt with state government that you're not going to have that. I mean, surely in 1979 when EPA adopted the rules saying states must have authority to sue, to sue anybody that violates the program. I mean, you would think surely they would have thought of that. They probably weren't thinking about the state itself as going to be one of the violators. I'm not so sure, Your Honor, because the EPA required states to submit applications showing that they could sue anybody. They had to have that authority. And in fact, Alabama defines the term person who can be sued as including state entities. Let me ask you this, and if you don't want to answer just that, I don't know, but do you really want this result? I mean, assuming that was the proper interpretation and after all your negotiations, well, we won't push it so hard if you'll do this, that, and the other. If all that failed, do you want more than 30 states to lose any permitting authority and the EPA be told just do the best you can? We know you don't have enough to do what you're supposed to do without all this, but now you've got 38, whatever it is, states. You've got to do their function too. I mean, I don't understand that unless it's a great big old bargaining chip and you want to negotiate something from the states. Now, I agree, Your Honor, that that particular issue is very problematic just because of the constitutional impediments. But there are a host of other minimum requirements that EPA has just set aside. We'll see, but by bringing this and overshooting what you really want to get, you're clouding your route to the other issues that can be remediated. And maybe you're like the EPA, it's too late now. You've done what you've done, but that just, you know, there is an absurdity exception to statutory constructions. It's a very, very narrow one, but I wonder if there isn't an absurdity exception to some EPA regs as well as the statute. Well, I'll say again, the ball is in EPA's court. They can change the rules. They can change those minimum requirements. If they find something that's just an impediment they can't live with, they can change those requirements. What is the harm that you're complaining about in this one example? If EPA has said to Alabama, you have other sticks to use against Alabama agencies. You might not be able to sue them, but you have, you can negotiate, you can do other things. Where is that determination? Why is that deficient? Why is that not, what harm is that causing? The failure to be able to sue the state agency? I know they're not meeting the statute, but EPA has said, well, I know you can't meet this agencies to come into compliance. Are you able to point to harm that that has caused? We can say that the inability to sue state agencies creates a lack of deterrence. It does not promote compliance. It results in state agencies not complying and not being brought back into compliance as quickly as they would otherwise. Okay, we took you over, Mr. Lutter, but we did it. So you get your full five minutes. Thank you. All right, Ms. Bett. Did I get that right? Your Honor, it's actually bot, as in botany. Thank you. That was my next guess, but thank you. Good morning, Your Honors, and may it please the Court again, Simi Bott for the United States Environmental Protection Agency. Your Honors, I'd like to begin, if I may, with the statutory text. The Clean Water Act does not constrain EPA's discretion to begin withdrawal proceedings. The Riverkeeper has acknowledged in their reply brief that the statute is silent on beginning withdrawal proceedings. EPA did not then bind itself by regulation to call a hearing to withdraw a state's entire permitting program whenever the state is failing to meet even a single requirement. Withdrawal is an extreme remedy, and EPA has never considered withdrawal proceedings to be a mandatory response to any state noncompliance. Has EPA ever held a hearing concerning withdrawal of an NPDES program before? No, Your Honor. EPA has never held a formal hearing pursuant to the statute, and I think that speaks to how well EPA is able to cooperate with the states and is able to get corrective action and remedial efforts even without commencing formal withdrawal proceedings. For example, one of the environmental groups here, LEAF, submitted a withdrawal petition back in 1995 concerning the conflict of interest requirements, and EPA was able to come up with a process with Alabama to fix that problem and without having to actually commence a formal withdrawal proceeding. Is that how they came up with Alabama's recusal rule? Yes, Your Honor, that's right. That is the recusal process that EPA approved back in 1997. But EPA never went in to amend the regulation to bring it up to date with the compromise solution for Alabama and any other state that had that problem, did it? Well, Your Honor, that solution was well within keeping of the bounds of the regulation. The regulation states that the board, which is the set of members that decides water permitting issues, must be unconflicted. And for this board, Alabama is following the conflict of interest requirements in the regulation and in the statute. It's easier to fit that compromise into that language of the reg than it is to fit the other state agency solution, if any, into the language. I mean, what's the solution for that without revising or amending the reg? Well, Your Honor, as EPA held in its interim decision and reaffirmed in its final decision, the solution is not to call withdrawal proceedings, which may lead to federal reprisals. It applies to all permittees and all violations. It was not specific to the state. It was never intended to be specific to the state. Of course, there are so many states that . . . But it covered the state. It covered everything. It does. Due to its broad language, it does appear to. However, I think as Your Honor mentioned, it would be absurd to interpret that regulation so broadly because there are . . . Or one could say it's absurd not to revise the regulation. Your Honor, but I think as you noted, EPA does have constrained resources and EPA is able to interpret its regulations even without revising its regulations. Yeah, but if you interpret shall to mean may? I think we're still referring specifically to the civil penalties provision. And no, we don't interpret shall to mean may. But I think there is a serious question as to how that regulation should be interpreted. And getting back to the . . . Well, how do you interpret that language to mean anything other than what it says? It doesn't seem ambiguous to me. Yes, Your Honor. But I think as you were alluding to earlier, there are exceptions can be made even when the plain language seems to suggest only one response because of absurdity, because of serious constitutional questions. And this may be a case where that rule should be applied. But we don't need to get there here because here all we're deciding is whether withdrawal proceedings should be commenced. And in making that decision, EPA can . . . Lutter's position is no, you've got to . . . What we're deciding here is whether you should follow the regulations and the procedures and find there's a deficiency and declare that, write that. Your Honor, let me disentangle the regulation. So if we're talking about the withdrawal regulation, that regulation does not say that EPA shall commence withdrawal proceedings for any reason. It says that EPA may investigate allegations . . . Even if you find a deficiency, you don't have to withdraw the permitting authority. Yes, Your Honor, that's correct. To me, like an argument in his favor because what he's arguing now is you must find a deficiency or explain why there's not any deficiency. You must make a deficiency determination. And what I was trying to take him down the road to is, but if they do that, you're going to have withdrawal of permitting authority or at least that can be the result of it. And now you're saying, no, don't worry about that being the result of it. That plays into his argument, fine, the next step, the only one he's asking for right now is find the deficiency. Your Honor, I'm not entirely sure that I understand your question, but our interpretation of the withdrawal regulation is that it is discretionary. It sets out a discretionary process that allows EPA to commence withdrawal proceedings, but does not necessitate that EPA call withdrawal proceedings. There is nothing in the regulation that says EPA must call withdrawal proceedings. So are you hanging your hat on the word whenever? No, Your Honor. It's true that in the statute, there's no clear command that EPA call withdrawal proceedings. And I think KABA acknowledged that in its reply brief, but I think that KABA's argument now is that the regulation requires EPA to commence withdrawal proceedings. And that is not at all what the regulation says. It's not what the plain language of the regulation says. EPA has never interpreted this regulation in that way. From the very inception of this regulation in 1980, EPA said that calling withdrawal proceedings for any violation would be draconian. In 1986, when EPA issued its guidance, again, EPA had an entire chapter on oversight outlining all of the various tools for addressing programmatic deficiencies, and withdrawal proceedings are at the very end of that list. There are many other tools that in 1986 was informal dialogue, but EPA can also offer federal enforcement support, which is the solution that EPA offered in its interim decision regarding the sovereign immunity question. Did you say a moment ago that the EPA has never initiated withdrawal proceedings? Yes, Your Honor. That's correct. So, I mean, even assuming that EPA has a lot of discretion in whether to initiate those proceedings, I mean, what on earth would ever compel the EPA to at least initiate the proceedings? Your Honor, I think that you can find an example in this record, which is that EPA was especially concerned about Alabama's resources to implement its permitting program, especially after the legislature slashed its budget significantly. And that's something that EPA looked at in the in detail in its final decision. And even though EPA ultimately decided that the resources appear to be sufficient at this time, EPA did note that it is still carefully looking at Alabama's resources. So, I think that is an issue that EPA would consider could merit withdrawal proceedings at some time in the future if necessary. So, your position is that you don't have a withdrawal proceeding going, right? Your Honor, the first determination is whether to call withdrawal proceedings. I understand that. And your position is you have to call, there has to be a withdrawal proceeding ongoing before there's a deficiency determination. Before there's a deficiency determination that would prompt appropriate corrective action. Right, which is what he's seeking. And then your position is that under 123.64 says the administrator may order the commencement of withdrawal proceedings, right? Yes, Your Honor. It doesn't seem that simple in your brief, but I would think that would just be may means may. Absolutely, Your Honor, may means may. Once you get it going, you get into shall territory, which is why the administrator doesn't want to get it going. Your Honor, it is that juxtaposition between what is possible before withdrawal proceedings are called and what must come after that I think supports EPA's interpretation of this regulation. And, of course, because the plain language does not compel another result, EPA's interpretation does receive deference. I think that also this juxtaposition compelled the court, the D.C. Circuit, in the National Wildlife Federation case to interpret a similar withdrawal regulation to allow the agency discretion to call withdrawal proceedings. And the guiding principle in that case I think is also applicable to this one. It's that withdrawal proceedings are essentially an enforcement tool. And as such as the Supreme Court observed in Heckler v. Cheney, enforcement is peculiarly within the agency's province and the agency should have discretion to make that decision. The statutory language begins whenever the administrator determines after public hearing that a state is not administering a program approved, etc. So, to comply with the statute, does the determination, what you consider to be a discretionary determination, you're saying it can happen with or without a public hearing. Is that correct? No, Your Honor. What we're saying is that when EPA calls a formal withdrawal proceeding, EPA does have to make a deficiency determination. But before EPA calls a withdrawal hearing, EPA has discretion to decide whether or not to do so. And the factors that EPA can consider extend beyond whether they're simply a deficiency. EPA can consider, for example, whether the state is going to take corrective action without calling a withdrawal hearing. EPA can consider whether its resources are really best spent calling a withdrawal hearing when, you know, there may be no corrective action that can come out of it. But the statutory language seems to suggest that there has to be a public hearing and then the EPA decides whether or not to exercise its discretion. Your Honor, I think the statutory language speaks to what happens after the withdrawal proceeding, not what happens during the withdrawal proceeding. But not what happens before the withdrawal proceeding. There is no constraint on when EPA can call the withdrawal proceeding. And petitioners acknowledge this to be true in their reply brief. I believe that's on page 2. So there is agreement on this matter that the statutory text does not constrain EPA in terms of beginning withdrawal proceedings. So all we're looking at is the regulation and, as Chief Judge Carnes succinctly put it, may means may, EPA does not need to call withdrawal proceedings. There are other tools that EPA can use to address deficiencies, as I was saying before, federal enforcement support, but also imposing conditions on state grants. That's also an effective tool that EPA uses to leverage its power and to effect change in state programs. Unless there are other... Well, and I think that the one thing we've been talking about, the one area where we recognize that Alabama cannot comply is in suing the state agencies. And I think opposing counsel has certainly talked about amending the regulation. And while we acknowledge that's a lengthy process, there's nothing that would prohibit, because of this pending lawsuit, EPA from beginning the notice of proposed rulemaking or anything like that, correct? To beginning the process. Yes, Your Honor, that is a possibility. And EPA has a massive regulatory team in place. That's correct. I'm not sure that EPA would call it that, but... As someone who used to work at OIRA, the Office of Information and Regulatory Affairs, I might disagree with that, but they have a regulatory team in place. They do have a regulatory team, and that is an option, but we don't need to get there yet, is what I'm saying. Because EPA has discretion to call withdrawal proceedings or not, it can decide that this factor, this ground just doesn't justify withdrawal proceedings. I think that part of its reasoning is that if we were to go to withdrawal proceedings, EPA would have to decide what appropriate corrective action the state could take. And it's hard to imagine an appropriate corrective action here. So EPA recently decided not to go ahead and spend its resources on a withdrawal proceeding, which is a resource-intensive process, because there's presiding officers, very much like court. And EPA can better spend its resources working with Alabama to improve other aspects of the state's implementation, which, while not failures per se, do more substantially impact water quality. Now, even if EPA were to overtake Alabama's program, this problem of Alabama not being able to sue itself for civil penalties, that would be ongoing, and it's unclear how that would benefit petitioners in any way on that ground. On the other three grounds, because EPA has discretion to decide whether or not to call withdrawal proceedings, EPA recently decided that these grounds also did not justify withdrawal proceedings. First, on public notice, Alabama's practice of publishing notice of specific discharge locations online, rather than in newspapers, is not the sort of substantial and impactful action that would merit withdrawal proceedings. Second, on inspections, Alabama is meeting EPA's goal of inspecting all major sources once every two years, and COHAVA, the Riverkeepers, did not show that Alabama lacks the procedures and ability to conduct even more inspections, and procedures and ability are the regulatory requirements. So, because... Is Alabama unusually deficient in the inspection compared to other states? Are other states also sharing that difficulty of inspecting all of the major water sources in one year? Your Honor, EPA actually recommends that the states inspect all major sources once every two years so that the states can dedicate more of their resources towards inspecting minor sources and other sources that are harder to detect non-compliance without inspection. So, this is not... Every two years is not directed solely at Alabama. It's applied throughout the states. Yes, Your Honor, that is the initial goal, but EPA does discuss the goals with the states on a state-by-state basis as well. So, you've got to have procedures and plans to do it every year? Yes, Your Honor, you do have to have the procedures, meaning the legal authorities, to conduct those inspections, and it's never been alleged that Alabama lacks those procedures. I guess procedures must be a term of art, which means it doesn't mean what it says. Your Honor, I think that it helps to put this regulation in So, when a state is submitting paperwork essentially for EPA approval, the state has to point to legal authority to say that it can do these things. Why require that if EPA doesn't require it? Why require that the state has legal authority to do something that the EPA doesn't require be done? Your Honor, EPA has in the past required states to conduct inspections on an annual basis, and it could be that in the future EPA again decides that that's the best way to carry out the goals of the Clean Water Act, and I think that that is the purpose. Okay, so you're suggesting, as you were I think alluding to before, even if there's not actual compliance, if in the EPA's opinion there's substantial compliance, that might be something that's sufficient for the agency? Yes, Your Honor, I think that EPA can consider how to balance its can consider because of substantial compliance that withdrawal proceedings are not the best way to use its resources. Ultimately, EPA's goal is improving water quality. It's not taking over state programs, and so EPA can decide what is the best way to achieve that goal of improving water quality. Thank you, Your Honor. Let me go straight to the elephant in the room. The term may in 123.64.4b. Indeed, it suggests some discretion, but when exercising that discretion, we contend that the government must provide an explanation for its refusal to order withdrawal proceedings that is grounded in the text of the regulation, and the text of the regulation talks about a determination that the state or whether the state has complied with minimum federal requirements. That's the text. That's the focus of that exercise of discretion. But the regulation does not say that. You're going on the Supreme Court opinion? Yes, yes. Because the regulation just says that the administrator will respond in writing to any petition to commence withdrawal proceedings, which you would concede that the administrator has done in this case? Yes, but the regulation... So you're saying it goes further that he has not met the requirements that are imposed under the Massachusetts, the U.S. Supreme Court case? Correct. I'm saying that they have not linked their decision to the purpose of the regulation. The regulation says in its opening sentence, the administrator may order the commencement of withdrawal proceedings on his or her own initiative or in response to a petition alleging failure of the state to comply with their minimum requirements. That's the focus of that determination. That initial determination whether cause exists, the focus is on whether or not the state complied. And to expand it into, we have discretion to go beyond just that focus. We have discretion to consider other things. That's problematic. And that's why we don't have any proceedings in the United States on withdrawal, because they exercise that discretion every time. So let me talk briefly about... So your position in 123.64b1 is they have discretion only if it's not clear that there's a deficiency. They have discretion, may commence. They have discretion not to commence, but they don't have discretion not to commence if there appears to be a deficiency. Correct. I think they do have discretion about timing. But it doesn't say it says may commence, not may decide when to commence. Fair. Okay. I think I understand that. Briefly about the other issues, because they illustrate why the exercise of discretion is so problematic. On the public notice issue, the regulation says publish notice in a paper, provide a general location of the discharge. They don't do it. They've offered a, or they've allowed a substitute alternative for that. But that's not compliance with the minimum requirement. But is it substantial compliance? Pardon me? But is it substantial compliance? I mean, the information is provided. I believe so. Back in 1979 or whenever it was that they adopted this public notice requirement, the internet was not real popular. So everything was through newspapers. It's a perfect illustration for why EPA ought to go out and do a rule revision to allow other ways of doing it. But right now the regulation is publish it in the paper. That's the minimum requirement. You can't do less than that. Now, like I said, this petition or the petition that was presented to EPA has been there for seven years. During that seven year time frame, EPA could have changed the regulation. Surely they had enough time. They didn't do it. Board membership is the same issue. The regulation is clear on its face. It mimics the statutory language. A conflicted member cannot serve on a board regardless of what kind of decision they're making. If that board has the power to determine permits or permit issues, a conflicted member cannot sit on the board. Two previous opinions by EPA say recusal and abstention are not allowed. Again, well, in this case, there's a statutory requirement. A rule change could not be made. So they need to go back and correct that deficiency. Annual inspections, the regulation says procedures and ability to perform annual inspections. That's what the regulation says. EPA adopted a policy, not a regulation, not a regulation amendment. EPA adopted a policy that says do it every two years. And then they adopted a revised policy that says do it every two or three years. So this is really a lawsuit to say EPA can make all of these deficiencies okay if it revises its regulations. So you're really, at the end of the day, trying to get EPA to make its regulations fit what's happening in reality. No, we're just saying that the EPA has the opportunity to do that if they want to. On the board membership, they cannot change it because the statute requires it. But it is a little unusual to come in and say you're not meeting the regs. So we would, what we're asking is for EPA. I don't think so. If EPA sees, like on the notice issue, if they see that publication in the newspaper is now archaic or publication that allows use of the internet as a substitute is more appropriate, I mean, that's an appropriate time to do a rule change. That's appropriate reason to do it. Okay. We've got it, Mr. Lloyd. Appreciate the arguments. Thank you, Judge.